## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GREGORY GORECKI,
*individually, and on behalf of all others*
*similarly situated*,

      Plaintiff,

v.                            CASE NO: 21-cv-01023 MSS/JSS

GRAND DESIGN RV, LLC,

      Defendant.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Gregory Gorecki, on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to himself, upon information and belief, and upon the investigation of his counsel as to all other matters, and brings this class action against Defendant Grand Design RV, LLC ("Grand Design"), as follows:

## NATURE OF THE ACTION

1.    This action is brought to remedy violations of applicable law in connection with Defendant's design, manufacture, promotion, and sale of its Imagine model RVs (the "RV").[1]

---

[1] To aid the Court's review, Plaintiff uses "RV" to refer to the specific defective model of RV that he purchased.  Plaintiff uses the term "travel trailer" as a more general reference to these types of vehicles.

2.     The RV is expensive by any measure, with base models starting at approximately $29,000.  The RV is purported to be of extremely high quality with Grand Design promoting its unmatched customer service.  In reality, the RV suffers from a Slide-Box Exterior Seal Defect (the "Defect"), which causes rainwater to collect on the roof of the Slide-Box where it then travels down the exterior rubber seal on the wall of the Slide-Box to the Slide-Box's floor, where it is then funneled into the interior of the RV, where the water is finally trapped between the interior floor of the main cabin and the floor of the Slide-Box itself. The Defect results in water intrusion, water damage, and ultimately, mold growth, when a consumer uses their RV in the ordinary course.  And the Defect substantially decreases the effectiveness of the RVs' protection against water intrusion and against the elements—the sole purpose for which they are sold.[2]  To make matters worse, Grand Design systematically denies warranty coverage.

3.     Grand Design has actual knowledge of the Slide-Box Exterior Seal Defect in the RV, and has had this knowledge since well before Plaintiff purchased his RV.  Grand Design has known about the Defect for an extended period of time due to direct customer complaints, warranty repairs, and numerous Internet complaints.  Rather than honor its warranty and replace the defective components of the RV with non-defective parts or an RV of similar value, Grand Design pretends that certain "fixes" will cure the water intrusion problem caused by the

---

[2] Grand Design RV, "Grand Design Slide-Box Construction," available at https://www.youtube.com/watch?v=Z_y7586HPsI (last visited July 14, 2021).

Defect.  If a customer complains within the warranty period, Grand Design covers the cost of limited warranty repairs despite knowledge that these "repairs" will hide and potentially delay, but not resolve, the Defect.  To make matters worse, Grand Design strictly denies any additional warranty repairs after its three (3) year limited structural warranty (the "Warranty," and in reference to the specific time period covered by the Warranty, the "Warranty Period") expires.

4.     Plaintiff and the Class respectfully request that this Court put an end to this misconduct, and instead hold Grand Design accountable for its actions and require it to provide Plaintiff and members of the Class appropriate relief for the damages suffered.

5.     As detailed throughout this Complaint, other buyers echo Plaintiff's experience with their own online complaints across a host of forums.  This chorus of complaints shows that Grand Design has manufactured the RV defectively for *years*, and that its common practice is to only sign off on superficial repairs until the Warranty Period expires, all the while knowing that such repairs will not actually remedy the underlying source of the Defect.

6.     Grand Design received complaints of the Slide-Box Exterior Seal Defect as early as January 2017.  It has since attributed the Defect to a wide-ranging array of problems, pointing the finger at service technicians, suppliers, weather conditions, and even its customers themselves, all while offering ineffective "band-aid" warranty services in order to push consumers through the Warranty Period.

3

7.     Grand Design has failed to fix the Defect.  Rather than adjusting its manufacturing processes or re-designing and replacing the defective Slide-Box Exterior Seal in its RVs to ensure they perform their intended function reliably and safely, and despite its knowledge of the Defect and common water intrusion, Grand Design continues selling and leasing the RVs with the Defect.

8.     The Defect presents a significant safety risk for Plaintiff and members of the Class because the presence of mold is a well-known health hazard.  When the Slide-Box Exterior Seal is not performing properly, water leaks and intrudes into the inside of the RV, and that water causes continued mold growth.  The occupants of the RVs are at risk of exposure to mold spores and loss of use due to Grand Design's failure to disclose the existence of the Defect and the corresponding safety risks caused by the Defect.

9.     Despite Grand Design's knowledge of the Defect, Grand Design has never disclosed to Plaintiff or members of the Class that the Defect exists, and Grand Design will continue to hide the Defect absent intervention by this Court.

10.    As a result of Grand Design's failure to take appropriate corrective or remedial action, and Grand Design's concealment and affirmative misrepresentation of the existence of the Defect from and to unsuspecting owners, Grand Design has caused Plaintiff and members of the Class to suffer damages in that they did not receive the benefit of their bargain.  As such, Grand Design has breached its express warranty, violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.,* breached the common-law implied warranty of

4

merchantability, and violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202 *et seq*.

11.     As a result of their purchase of the RV, Plaintiff and members of the Class were damaged, in an amount to be determined at trial, because they paid valuable consideration for a product that was not as advertised or warranted, and was, as a result, worth substantially less.

12.     This is a simple case of Grand Design manufacturing the RV with poor materials, poor manufacturing processes, and/or a design defect and compounding that failure by refusing to properly repair the Defect in the RVs for Plaintiff and members of the Class. Plaintiff and members of the Class have experienced a standard product defect: Grand Design failed to use proper materials to design its product and/or manufactured a product in a manner that causes it to suffer from the Defect.

13.     By virtue of this class action, Plaintiff seeks to enjoin Grand Design's unlawful and unfair practices and to require Grand Design to compensate Plaintiff and members of the Class for the diminished value of the Defective RVs that they purchased.  Plaintiff also seeks attorneys' fees, costs, and expenses.

## **PARTIES**

14.     Plaintiff Gregory Gorecki is a citizen of Florida.  Plaintiff currently resides in Duval County, Florida.

15.     Defendant Grand Design is an Indiana company with its principal place of business at 11333 County Road 2, Middlebury, IN 46540.  Defendant is a

subsidiary of Winnebago Industries, Inc.  Grand Design is the entity responsible for injecting the RVs purchased by Plaintiff and members of the Class into the stream of commerce throughout the United States.

## JURISDICTION AND VENUE

16.    The United States District Court for the Middle District of Florida has subject matter jurisdiction over this action under the Class Action Fairness Act because there is minimal diversity and the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.   28 U.S.C. § 1332(d)(2)(A).  None of the causes of action stated here have been assigned or otherwise given to any other court or tribunal.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c).

17.    Grand Design does substantial business in the State of Florida and within this judicial District, is registered to and is doing business within the State of Florida, and otherwise maintains the requisite minimum contacts with the State of Florida.

18.    This Court also has jurisdiction over Plaintiff's claims because Plaintiff is a Florida resident and Plaintiff purchased the RV at issue at Grand Design's authorized dealer, LazyDays RV, in Tampa, Florida, which is within this judicial district.

## FACTUAL ALLEGATIONS

**A.    Grand Design's Business Model**

19.    Throughout the Class period, Grand Design manufactured, marketed,

operated and sold travel trailers to consumers located in all 50 U.S. states and Canada.  Its travel trailers are distributed nationwide by Grand Design through its numerous dealers.  Grand Design operates its website with a URL of www.granddesignrv.com.

20.    Although travel trailers are routinely sold across the United States, consumers often struggle with selecting a brand or model that is suited for their family.  Potential buyers are often scared off by fears of safety, maintenance, quality, dealer warranty services, and customer service.  Consumers rely on manufacturers to avoid injury and protect against defects.

21.    Grand Design launched its business in 2012.  It sought to distinguish itself from the crowd by describing itself as "*doing the right thing*."[3] On its website, Grand Design claims to be dedicated to long term value, customer focus, class-leading warranty, and superior service.[4] Grand Design claims to raise the quality bar by putting "every Grand Design RV through a series of quality inspection gates during the manufacturing process.  Once completed, the unit undergoes a comprehensive 'final finish' inspection."[5] Thus, buyers feel assured that travel trailers sold by Grand Design are worth the high-end purchase price demanded of its products.

---

[3] Grand Design RV, "Our Story," available at https://www.granddesignrv.com/our-story (last visited July 14, 2021).

[4] *Id.*

[5] *Id.*

22.     Grand Design supports its claims of high quality by informing customers of its qualified staff and "excellent reputation for second-to-none industry craftsmanship."[6]  Unlike other companies that outsource manufacturing and design, Grand Design's CEO and senior management work with the production facilities to develop its travel trailers.[7]

23.     After the "final finish," every Grand Design travel trailer is shipped to a PDI (Pre-Delivery Inspection) area where the travel trailer is put through a rigorous 300+ point inspection checklist,[8] and before the travel trailer is shipped to a dealer, Grand Design certifies each travel trailer through its PDI certification.[9]



24.     Grand Design uses several mediums to market and sell the RV, including its YouTube channel titled "GDRV TV."[10]  In Grand Design's YouTube

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Available at https://www.youtube.com/channel/UCHabgHKiBPuUd3J3NHNyXVQ (last visited July 14, 2021).

video titled "Grand Design Slide-Box Construction," Grand Design's employee, Lance Lees, describes in detail the RV Slide-Box (the portion of the RV that, once parked can be extended outward beyond the fixed wall to increase the interior square footage of the living area), and explains that Grand Design acknowledges that "when the walls come together, we identify that as a water intrusion point."[11] To prevent leaking, Mr. Lees claims that Grand Design is "wrapping all of these seams where water could potentially come in to ensure water does not."[12]  Based on the numerous consumer complaints set forth below, however, it is clear that Grand Design's Slide-Box Exterior Seal is defective in that water regularly intrudes through the Slide-Box and into the RV causing saturation and mold.

**B.     Grand Design's Three-Year Limited Structural Warranty.**

25.     To further alleviate concerns about the quality of the RV, Grand Design expressly advertises and guarantees a three-year limited structural warranty (the "Warranty"):

> **SUMMARY**
> **What does this Warranty cover?**
>
> Grand Design RV, LLC ("Warrantor") provides this Three (3) Year ("Warranty Period") Limited Structural Warranty [which begins to run from the earlier of (i) the date of purchase by the original retail consumer purchaser or (ii) when the recreational vehicle is put into service] against certain defects in materials and/or workmanship for the structural components manufactured by, and workmanship provided directly by, Warrantor arising under normal use and service to **the structural components (as defined below) for the above described recreational vehicle** of Warrantors to the

---

[11] *Id.*

[12] *Id.*

ORIGINAL RETAIL CONSUMER PURCHASER for the Warranty Period. This Warranty only covers material components and parts of the Structural Components actually manufactured by and made by Warrantor and labor provided directly by Warrantor. In addition to the foregoing and the other limitations and restrictions set for in this limited warranty, this limited warranty only covers a recreational vehicle sold to the original retail customer by an authorized warrantor dealer within the (30) day start period set forth above. This Warranty is not assignable to any person or entity.

**"Structural Components" consist of:** materials and/or workmanship directly attributable to Warrantor, namely, the laminated fiberglass sidewall assembly, laminated fiberglass rear wall assembly, laminated fiberglass front wall (wrap) assembly, sidewall/end wall/ front and rear wall frame assembly (wood and aluminum), roof assembly, and floor assembly.

(Exhibit A).

26.     The Defect constitutes a "defect[] in materials and/or workmanship" in the sidewall frame assembly and other Structural Components by virtue of the Slide-Box allowing water to intrude into the RV.

**C.     The Representative Transaction and Manifestation of the Defect**

27.     Plaintiff is the original retail consumer purchaser of his RV.

28.     On October 10, 2017, Plaintiff purchased a brand new 2018 Grand Design Imagine 2600RB (Vehicle Identification Number: 573TE3027J6604900). Plaintiff paid $29,300 for the RV.  Plaintiff purchased the RV through Grand Design's authorized dealer, Lazydays RV of Tampa ("Lazydays"), located at 6130 Lazy Days Boulevard, Seffner, Florida 33584.

29.     Grand Design's website directs consumers to purchase its RVs at

Lazydays.[13]

30.    On July 9, 2018, Plaintiff took his RV to Lazydays and first reported a pink discoloration in the flooring of his RV to Lazydays.  Plaintiff had only first noticed the pink discoloration a few days prior.  At that time, Plaintiff had not noticed any visible leaks or water intrusion in the RV.

31.    At that time, Lazydays determined that the floor discoloration was likely due to improper glue used in the RV flooring.  At that time, Lazydays' inspection revealed: "floor is turning pink by the emergency window-customer has not seen any water leaks." (Exhibit B).  Lazydays did not take further steps to repair the RV because it purportedly did not believe that the pink discoloration was related to water intrusion or other substantial defects. (Exhibit B).

32.    Less than a year later, on June 17, 2019, Plaintiff returned to Lazydays with complaints that the RV's pink discoloration in the flooring had increased.  Again, Plaintiff has only first noticed the additional discoloration a week prior.  At this time, Plaintiff still had not seen any leaks or water intrusion.  During that visit, Lazydays technician reported:

> POS MFG WTY- **Floor is turning pink by the emergency-window-customer has not seen any water leaks.**
> CORRECTION: remove bed frame trim remove floor trim remove sliding door jamb by wall remove wall trim life carpet at right corner remove staples cut out damaged vinyl seccion it was copletly glued leving paper on floor when removed vinyl floor there is water damage from under the slide corner in to bedroom by wall notified advisor and

---

[13] Grand Design RV, "Find Your Closest Dealer," available at https://www.granddesignrv.com/shopping-tools/find-dealer (last visited June 28, 2021).

estimator waittin in approvals 2.0hr.

**Additional damage to sub floor found**
CORRECTION: remove a/c control remove light switch remove small bedroom entry wall panel and wall frame remove slide out to gain access to damaged floor that is still wet start cutting out damaged floor area remove roller and remove carpet under s/o remove bed platform. 4.0hr 07/08/19 4618 cut out damaged floor two secceions first 24"x 19 1/8" , second seccion 23 13/16" x 19 3/8" build both seccions with ¼" luan 1" foam and use planner on a 2"x4" and reduce to 1" build each seccion and glue and put in vacuum bag over night to cure 8.0hr. 07/09/19 4618 remove subfloor seccion from vaum bag and knotch ¾" all around after cutting to size , and keep moving sides untile the floor seccion will fit in tight then use Sikaflex on all edges and center and lay down and screw together and cut top skin from ¼" luan to fit and waiting on doorskin to make top skin flush4.0hr. 07/10/19 4618 glued door skin to luan and put in vacuum bag over night 07/10/19 4618 install top skin glue with Sikaflex and staple cut out vinyl patch and glue down clean area and place on top plywood and let sit over night to cure 4.0hr. 07/11/19 4618 reinstall side wall frame and wall panels reinstall s/o reinstall s/o facsials reinstall carpet seal out side s/o make trim for bedroom floor and install and reinstall all wall and floor trim and bed.

**Check for water leak in front of d/s slide**
CAUSE: **corners of Upper and vertical D-seals open, back side of outer fascia's (miter cut) open**
CORRECTION: remove D-seals, cut to fit and install new D-seals, cut to fit and install eternal bond tape over miter cut on outer fascia's. seal corners and schwintek rails.

(emphasis added, without grammatical or typographical alteration) (Exhibit C).

33.    Lazydays' investigation and repairs revealed a saturated floor, water intrusion, and mold damage, as well as compromised protection from the defective Slide-Box Exterior Seal, which was supposed to prevent water intrusion in the first instance.  The following photographs depict Plaintiff's RV.









  34. On September 14, 2019, after finding mold growing within the RV

again, Plaintiff returned to Lazydays. Lazydays' technician reported:

> POSS MFG WTY-c/s substance growing on the furniture and
> cabinets-appears moisture getting inside the unit, customer keeps
> under covered storage so rain water isn't leaking inside of it-need
> estimate to send to Grand Design

CORRECTION: No repairs.

POSS MFG WTY-unit needs inside detail
SUBLET inside detail and ionizer machine to cleak air ple

(without grammatical or typographical alteration) (Exhibit D).

35.     On October 15, 2019, after finding mold growing again, along with the repaired floor lifted in spots where previous water damage occurred, Plaintiff returned to Lazydays for a warranty repair.  At that time, Lazydays detailed the RV and re-glued the flooring but made no further repairs.

36.     On July 30, 2020, the mold returned.  Unsatisfied with the previous repairs, Plaintiff contacted Grand Design and Lazydays to seek permission to have restoration/remodel/service performed at ServPro of Greater St. Augustine ("ServPro"), an industrial and residential cleanup and restoration firm specializing in mold remediation and restoration.

37.     The professionals at ServPro performed extensive work in an attempt to fix the continuing mold problems resulting from the Defect.  Amongst other things, they vacuumed the RV, applied an anti-microbial agent, cleaned the surfaces and carpets, ran a dehumidifier, ran an air scrubber, and performed contamination testing.  A sampling of photographs follows to demonstrate ServPro's labors.







38.   On August 5, 2020, Plaintiff hired Luce Air Quality ("LAQ") to perform a mold assessment.  The purpose of LAQ's mold assessment was to determine the sources, locations, and extent of mold growth in the RV, and the conditions that caused the mold growth.  LAQ performed its assessment through visual inspection and collection of psychrometric diagnostics, moisture measurements, and bioaerosol sampling results.  LAQ did not conduct any invasive or destructive testing.

39.   LAQ's visual inspection revealed elevated fungal levels and LAQ observed visible mold growth on the furniture and particle cabinetry. Additionally, LAQ's visual site inspection indicated that conditions presented were conducive to

mold amplification. A sampling of photographs follows to demonstrate the conditions that LAQ assessed.







40.     LAQ concluded that the RV's cause of mold was a result of inadequate environmental controls paired with possible air infiltration.  LAQ recommended that the RV undergo a professional mold remediation.

41.     On August 18, 2020, while the RV was still stored at ServPro, Plaintiff hired John Cotton Mobile RV Repair Services ("Cotton") to conduct an independent pressure test on the RV.  Cotton's pressure testing was conducted using a Sealtech RV Leak Finder Machine ("Sealtech").

42.     The Sealtech RV Leak Finder Machine can be purchased at www.rvleaks.com.  On Sealtech's website section titled "how it works," Sealtech describes its leak testing as follows:

> THE SEALTECH 430 series makes ingenious use of a very simple fact: air flows through an opening covered with a soapy water ("surfactant") solution produces a bubble precisely at the opening.

The system draws outside air into the RV via the roof vent, where it is dispersed, creating a positive interior pressure. This pressure difference causes air to flow outward through any outer skin faults. The application of a soapy water solution to suspicious areas of the outer skin results in a very visible bubble exactly over each fault.

. . .

Owners have been able to assign leak diagnosis and recording to inexpensive junior staff, freeing up more experienced technicians for leak repair and other tasks requiring greater expertise.[14]

43.     Sealtech's website section titled "how it works," links to three videos to illustrate the importance of pressure testing for air leaks.

44.     Transcriptions of excerpts from three videos instructing on the use of Sealtech follow:

Video 1: Leaks can cause many problems. Loss of heat or air conditioning, water damage, infestation of bugs, or even bigger safety concerns. . . . The Sealtech leak machine will find any voids in roof, window, or slide molding caulk. When installed, the Sealtech machine creates a positive air pressure inside the RV. After closing all the doors and windows, the technician sprays the RV with a soap water solution. Any air leaks at moldings, windows, vents, or accessories will show bubbles and the possibility of a water leak. Tests only take about an hour to perform.[15]

Video 2: A few key points about why it's so important to use: (1) it will help us detect leaks that you normally will not be able to find by just visually inspecting or being able to tell. Just cause you can't see the leak does not mean that water has not gotten into the [RV] and started rot . . . Spray all vents, seams, rails, caps, and around your air conditioner to see if there are any leaks. What this is going to do is when we spray it it's going to bubble to wherever a leak is and wherever there is a bubble water can get in . . . Preventative

---

[14] https://rvleaks.com/how-it-works/ (last visited July 14, 2021).

[15] https://www.youtube.com/watch?v=kd0yHkhBA7g (last visited July 14, 2021).

maintenance is a key issue to having an enjoyable camping trip.[16]

Video 3: Hey RV(ers), would you like to know with 100% certainty that your RV didn't have any air or water leaks? Check out this short video. RV technical experts state that the number one cause of damage to any RV is water intrusion. Keeping moisture and rainwater from entering the RV is paramount . . . It's my opinion that the only way to be 100% certain that no leaks are present in any coach is to have a Sealtech pressure test performed . . . With the positive pressure inside, all air leaks will become evident by the formation of bubbles at the exact location of the breach . . . In most cases if air can get out water can get in . . . Now the technician knows for certain where the leaks are located, and repair methods can be effectuated . . . Once water enters the ceiling or side wall void, it can literally go anywhere.[17]

45.    Sealtech's RV Leak Finder Dealer Package costs $4,795.00.[18]

46.    During Cotton's Sealtech testing, he placed a Sealtech leak machine inside of the RV, pressurized the RV, closed all doors and windows, and sprayed the exterior of the RV with a soap solution.  Cotton's Sealtech testing revealed many bubbles around the Slide-Box Exterior Seal—demonstrating it was not air (or water) tight.  In an attempt to resolve the Defect, Cotton applied caulking to the RV's Slide-Box Exterior Seal.  Pictures of the process follow.

---

[16] https://www.youtube.com/watch?v=MeHZL-UKJoI (last visited July 14,2021).

[17] https://www.youtube.com/watch?v=iOQ-cJWGY-o (last visited July 14, 2021).

[18]   https://rvleaks.com/buy-now-sealtech-430r-rv-leak-dectector/ (last visited July 13, 2021).





47.     Plaintiff paid $660 for the RV Sealtech testing that was performed by Cotton.

48.     After a review and conversation with Plaintiff, on August 21, 2020, Grand Design's regional service manager, Shawn Thoms, agreed to pay for Plaintiff's mold remediation at ServPro.

**From:** Shawn Thoms <sthoms@granddesignrv.com>
**Sent:** Friday, August 21, 2020 8:13 AM
**To:** Kenny Woodruff <kwoodruff@servprogreaterstaugustine.com>
**Cc:** Sarah Korn SERVPRO <sarah@spoldcity.net>; 'Gregory Gorecki' <greg.gorecki@outlook.com>
**Subject:** RE: [EXTERNAL] 45647

Hello,


After review and conversation with the customer I have agreed to cover this.
Let me know if you have any further questions.



**Shawn Thoms**
**Regional Service Manager**
**Grand Design RV**
11356 CR2
Middlebury, IN 46540
574-825-9679--Phone
574-825-9249—Fax



49.     On September 21, 2020, Grand Design paid $4,874.42 to ServPro for

their efforts and purportedly remediate the mold in Plaintiff's RV.[19]

---

[19] It is worth noting that Grand Design paid more to ServPro for Plaintiff's mold remediation than it would have cost to purchase a Sealtech RV Leak Finder Dealer Package.

**From:** Sarah Korn SERVPRO <sarah@spoldcity.net>
**Sent:** Monday, September 21, 2020 7:48 AM
**To:** Shawn Thoms <sthoms@granddesignrv.com>
**Cc:** Kenny Woodruff <kwoodruff@servprogreaterstaugustine.com>; David Shirazyan <dshirazyan@servprogreaterstaugustine.com>; Svetlana Shirazyan <sshirazyan@servprogreaterstaugustine.com>; Jeanette SERVPRO <jeanette@spoldcity.net>; Gregory Gorecki <greg.gorecki@outlook.com>
**Subject:** 45647 - Greg Gorecki

Good morning Mr. Thoms,
Attached you will find all documentation associated with the mold remediation work we completed on the Gorecki family RV including invoice of (4874.42). Please reach out at your convenience with any questions or concerns.

Thank you,


Sarah Korn
*Office Manager*
Servpro of Greater St. Augustine/St. Augustine Beach
Servpro of South Fleming Island/North Bradford County
2205 Dobbs Rd. Unit #A
Saint Augustine FL, 32086
Office - (904)-429-4457


50.　　Just a few months later, in December 2020, Plaintiff and his wife went to pick up their RV for a weekend of camping only to find that the mold had reappeared in droves throughout Plaintiff's RV, despite the substantial efforts of ServPro.  For the first time, Plaintiff concluded that the mold caused by the Defect was incurable, even despite the many services he commissioned to try and fix the problem.  On December 15, 2020, Plaintiff sent Grand Design a certified letter and demanded a full refund because the Defect was never remedied to the extent that the RV could be safely used:

Dear Grand Design,

On October 10th, 2017 I purchased a 2018 Imagine 2600RB VIN:573TE3027J6604900. On July 9th, 2018 I reported an issue with floor discoloration and your company initially identified the issue as flooring adhesive that was bleeding through the floor covering. The floor discoloration continued to spread and on June 17th, 2019 it was discovered that the discoloration was the result of a water leak and not

the result of failed adhesive. Grand Design approved of the floor repair because it was covered under the original manufacturer warranty. Since the floor repair in the camper has had mold growth on at least 4 occasions; in August 2020, the camper was delivered to ServPro in St. Augustine Florida for a more complete repair. Grand Design approved and paid for the mold mitigation. However, in November of 2020, the mold returned. My family has not been able to travel and use the camper for its intended purpose. I have tried tirelessly to allow grand design an opportunity to cure this defective RV. It's clear that the mold issue is untreatable and will not be cured through future repairs. This damage is the result of a defective and irreparable vehicle.

I demand that Grand Design give me a full refund of my RV purchase. Please let me know where and when I can return Grand Design's defective RV. If you do not resolve this matter within 30-days, I'm going to contact my attorney. Thanks in advance.

Sincerely,
Gregory M Gorecki

51.     On January 13, 2021, Grand Design's customer service agent, Christine Holland, responded:

Good afternoon and thank you for reaching out to us.
I received a copy of your letter and would like to see some pictures of what you are seeing please? If you could email those to me, that would be great.
Once I receive those pictures and review them I will get back in contact with you.
If there are any additional questions, please let me know.
Thank you and have an excellent afternoon.

"No matter what happens in life, be good to people. Being good is the best legacy you can leave behind"

52.     On January 15, 2021, Plaintiff e-mailed Grand Design: "Good Afternoon, I have attached a few pictures and I would like to reiterate that this has been a consistent issue dating back to the purchase of the travel RV."

53.     On January 16, 2021, Plaintiff sent Grand Design several pictures of

26

Plaintiff's RV's mold issues.







54.     On January 18, 2021, Grand Design's customer relations representative, Christine Holland, responded:

> Good Morning.
> Thank you for the pictures.
> I just have a couple of questions for you.
> Did you reach out to Serv-Pro because I read in their documentation/contract that it appears that they will assist if you have further issues since the did such an extensive process on your RV.
> Do you have a de-humidifier in the RV? What are the outside temperatures where the RV is located? I see it says that it is covered; does that mean that you have some sort of tarp or something over it?
> It is my understanding speaking to the customer service agent that you worked with that we did the Serv-Pro remediation is as a one time goodwill along with additional testing following and it was communicated that this was a one time assistance. **The three year structural warranty expired in October 2020 and if a RV is covered and not given the proper ventilation (especially in more humid locations) this can result in damage because of excessive condensation and that would not be covered under warranty.**
> Please let me know.
> I hope you had a good weekend.
>
> "No matter what happens in life, be good to people. Being good is the best legacy you can leave behind"

(emphasis added).

55.     Plaintiff's RV was never stored under a tarp or other cover which would prevent proper ventilation. To the contrary, it was stored outdoors, whether under a tree canopy at Plaintiff's sister's property, under a metal roof at ServPro, or without any covering in its current location. Thus, the statements made by Grand Design in this regard were disconnected from Plaintiff's experience and storage of the RV.

56.     Aggrieved by this woeful response, Plaintiff's wife, Ms. Christine Butler Gorecki, later posted on Facebook:

> Our 2018 2600RD floor started with the pink stains. GD told us it was the adhesive defect. My advice...GET PICTURES and log all of your attempts to fix it. I insisted on them replacing the floor while under warranty. When Lazy Days Tampa did that work, it was apparent that the floor was rotting and there was mold. Leaks were detected around slide, and while the moisture was not obvious in the camper, damage was happening under our feet. After floor was replaced, 6 weeks later the entire unit was covered in mold. Had it cleaned professionally by Lazy Days. Three months later, same problem. Cleaned again. Still later, same problem, had ServPro clean it and air tested for mold. GD agreed to pay for the cleaning. ($4000 price tag for this deep clean). Two and a half months after this cleaning, mold returned on underside of massage chairs, all over the leather material, in the air ducts and on kitchen cabinets. We had to take all belongings out and clean again. Mold still will not go away. We are demanding our 2600 gets replaced. It is uninhabitable. This camping life dream has turned into a nightmare.[20]

57.     The mold in Plaintiff's RV persists to this day, as evidenced by the following photograph taken as recently as July 10, 2021, which depicts mold growth on just one location of many that have been afflicted.

---

[20] Facebook, "Grand Design Imagine 2600RB Owners," https://www.facebook.com/groups/408558422946703/permalink/1004318606704012 (last visited April 23, 2021).



### D.   Grand Design's Knowledge of the Common Design Defect

58.     In 2017 and prior to his purchase, Plaintiff thoroughly researched and reviewed Grand Design's marketing materials and website to determine whether he would purchase his RV from Grand Design.  Plaintiff was attracted to Grand Design's apparent dedication to quality and customer service, and he relied on Grand Design's claims that its travel trailers were far superior to those of other manufacturers.  At no point did Plaintiff know or anticipate that Grand Design would sell him a defective RV, fail to inspect the RV for air infiltration, fail to cure the Defect that it created, and then deny coverage under the Warranty.  Grand

Design knew about the Defect, and about associated issues with water intruding into the interior of the RV via the defective Slide-Out, well before Plaintiff purchased his RV on October 10, 2017. Indeed, Grand Design's website, and extensive dialogue between Grand Design and its customers, demonstrates that Grand Design knew about these problems over a year before Plaintiff purchased his RV.

59.    Grand Design's website directs any customers who are having problems with their trailers to a special page devoted to "Frequently Asked Questions" and "Basic Troubleshooting."[21]

60.    This special page has a subsection for problems with the RV's Slide-Out.  Grand Design expressly identifies problems with "[w]ater . . . getting in at the bottom corners of the [Slide-Out's] room."  Grand Design instructs customers to "check for voids in the seal on the slide roof and side panels."[22]  This information has been on Grand Design's website since at least June 2016.[23]

61.    This special page mirrors the Owner's Manual for the RVs. The Owner's Manual contains the same instructions for customers in a "Slideout" section under "Basic Troubleshooting." These instructions were present in the

---

[21]    Grand    Design,    "FAQ/Basic    Troubleshooting,"    available    at https://www.granddesignrv.com/owner-support/tech-corner/faqbasic-troubleshooting (last visited July 14, 2021).

[22] *Id.*

[23] *See* Exhibit F (archived edition of Grand Design's website from June 2016).

March 2017 revision of the Owner's Manual.[24]

62.     In 2017, Grand Design began receiving a host of Defect complaints about its Imagine line of RVs.  Indeed, numerous internet forums are replete with complaints about pink flooring, water intrusion under the Slide-Box, rotted floors, water leaks, and mold growth.

63.     Dissatisfied customers would complain on a number of specialized Facebook groups, including ones entitled "Grand Design RV Owners" and "Grand Design RV Imagine Owners."   Bill Martin—Grand Design's then-Director of Marketing, who had nearly twenty years of experience in the industry[25]— frequented these Facebook groups, and customers knew to call him out by name if they had problems with their RVs.

64.     These comments and conversations began at least nine months before Plaintiff purchased his RV.  For example, on January 2, 2017, customer Debra Oakley complained that she had been "battling leaks from the dining room slide all day," with "buckets everywhere along the slide" to try and stem the damage. Martin was promptly notified, and he offered to put Oakley in touch with Grand Design's customer service team.[26]

65.     On January 4, 2017, customer Mary Eisenmann Goodlin complained

---

[24] ECF No. 18-2 at 146.

[25] LinkedIn, https://www.linkedin.com/in/bill-martin-947b882a (last visited July 14, 2021).

[26] Exhibit G at 2-8.

of a "leaking side of the slide."  Martin again intervened offered to put Goodlin in touch with Grand Design's customer service team.[27]

66.    On March 19, 2017, customer Paul Schultz addressed Martin with a list of four issues with the Class Trailers "that are not one offs and are showing a trend."  Schultz identified these issues as "repeat issues and serious ones."  One of these issues was "[s]lider side tracks providing a path for water entry."  According to Schultz, "a factory production fix would look better and be permanent," as opposed to the homebrew solutions that "some [customers] are doing" to try and fix the problem.[28]

67.    Martin replied that "[w]e"—meaning Grand Design—"watch these type[s] of comments very closely and it is common practice for this information to be shared with our product teams to make sure that they are aware of any concerns that come up.  These comments do not go unheard as we are continuously working to improve our processes and deliver the best possible product."[29]

68.    On March 21, 2017, customer Chris Hesthaven complained of leaking after only "a little" rain with his trailer's slide-box open.  According to Hesthaven, while inspecting the slide-box, he could "see light from outside the coach, through the . . . seals and coming from the other side. How [is] this suppose[d] to keep water out?"  Hesthaven reached out to Martin and requested a call; Martin replied

---

[27] *Id.* at 9-10.

[28] *Id.* at 11.

[29] *Id.* at 14.

that he was "[o]n it."[30]

69.     Finally, on November 29, 2017—only weeks after Plaintiff purchased the RV—a potential customer, William Haines, complained that "[w]hen you search this page for leaks it's overw[h]e[l]ming.  Why can't GD solve this?  PDI [Grand Design's Pre-Delivery Inspection process][31] isn't catching these problems! Water intrusion is your enemy.  I would like to see GD answer on what they are doing to solve this problem.  It has to be costly for them and a real pain for the owners. GD please respond!"[32]

70.     Respond, Grand Design did.  Bill Martin commented on Haines' post, reiterating Grand Design's constant knowledge of the Defect.  Martin stated that "[w]e take leaks very seriously and have implemented additional processes to help minimize potential for water intrusion.  One of those processes is the double seals we use around critical openings and seams.  We have also recently implemented another process on multiple units per day called seal-tec which helps to identify any leaks before we do our second seal of the coach."  Martin provided his cell

---

[30] *Id.* at 15, 22.

[31] Grand Design's President and CEO, Don Clark, has touted that Grand Design performs PDI on "every single coach down the line."  According to Clark, PDI includes "water testing" and anything the PDI inspectors "find to have a defect, they send back to [the] plant, or have repaired at that facility, if it is minor."  Clark comments on what he perceives as the advantages of a purportedly rigorous PDI process: "[i]t's made us more efficient as a manufacturer; it's improved the quality of the product; and it's reduced warranty claims."  *See* Exhibit H.

[32] Ex. G at 25.

phone should Haines wish to contact him directly.[33]

71.    Beyond Mr. Martin's recognition of the Defect and interaction with Grand Design customers, below are additional excerpts from just some of the other complaints found on the Internet, YouTube, and Grand Design's own Owner's Forum, which appear without grammatical or typographical alteration.  Yet more complaints can be found in Exhibit E.

| Date | User | Complaint |
|------|------|-----------|
| 12/11/2019 | Debbie | We have experience nothing but problems with our Grand Design Imagine. From leaking, skin delamination, inside of door cracking and molding falling off are just a few of the problems. We purchased the camper in the spring of 2017 and by the fall, the under carriage was so rusted, it was hard to lower the stabilizers. We do live in WNY but the camper was only used from May to September. I fell in love with the layout. I really wanted this camper to work for us but with this many problems in the first 2.5 years. What does the future hold.[34] |
| 8/16/2020 | Jim | No, those are not antifreeze spots. And from posts I've seen in the last week or two on social media, they are not that "rare". I just did a search on some GDRV Facebook groups and found at least four other owners with the same issue. From what I understand, the pink spots on vinyl floors may be caused by a bacteria. Do a search for "pink spots on vinyl floors" and you'll find a ton of articles on it. Is there any chance that your floors are getting wet? I'd certainly look into investigating if GDRV could replace the floor with another brand. And they need |

---

[33] *Id.* at 26.

[34] RVInsider, "2017 Grand Design Travel Trailer Reviews on RV Insider," https://www.rvinsider.com/2017-Grand-Design-Travel-Trailers-RV-Reviews?type=Travel+Trailers&manu=Grand+Design&year=2017&sort=rating&order=asc (last visited July 14, 2021).

| Date | User | Complaint |
|------|------|-----------|
| | | to make 100% certain that the subfloor is completely dry before installing the new floor.[35] |
| 8/16/2020 | Rob | The pink spots are a dye released by the bacteria. Very difficult to get rid of once this has occurred. See https://ultra-fresh.com/pink-stainin...nyl-a-problem/ These are vinyl additives that will help to prevent this from happening in the first place. I wonder if Grand design changed suppliers, or their supplier removed this additive from their formulation?[36] |
| 10/11/2020 | Mike | When we took the dinette out there was also some mold along the walls and we were able to remove that but it was an eye opener for us that there was mold growing behind the dinette. |

72.    Grand Design recognizes that its RVs must be designed to withstand the pressures of its environment and how it will be used: "anything built by humans that travels down the open road is subject to issues, but it's how those issues are addressed that make Grand Design stand out."  Grand Design encourages "don't just take our word for it, visit the Independent Grand Design Owners page (Grand Design RV Owners) on Facebook and see for yourself."  "**We take care of our customers after the sale.** An informed customer will be a Grand Design customer."  Below are screenshot excerpts found in the Facebook group dedicated to Grand Design 2600RB owners, which appear without grammatical or typographical alteration.  The full content of these Facebook posts and comment

---

[35]    Grand    Design    Owners'    Forum,    "Pink    Spots    in    Floor," https://gdrvowners.com/forum/interior-storage/27219-pink-spots-in-floor (last visited July 14, 2021).

[36] *Id.*

threads can be found in Exhibit E.




**Karen Willhide Ranta**
We have a 2018 this happened to. Called GD got a
claim number and took it to the dealer. They will deal
directly with GD. They have had our camper for 3
weeks so I am guessing/hoping they are fixing it.

Like · Reply · 13w                                           1


**Judi Cabana Kelley Lafreniere** Author
**Karen Willhide Ranta** did they say what was
causing it?

Like · Reply · 13w


**Karen Willhide Ranta**
**Judi Cabana Kelley Lafreniere** nope I have just
seen others say it's moisture. But we have never
had any leaks or wet spots when we open up

Like · Reply · 13w · Edited                                  1

↳ View 1 more reply


**Brad Squires**
The insurance company wrote it off and I bought it
back. Now I'm replacing the floor.



Like · Reply · 13w


**Cindy Wesley**
Typically pink under vinyl is mildew. Not sure if this is

Like · Reply · 13w

38



**Chris Babin**
We have the same stains and nothing seems to remove them.

Angry · Reply · 13w 



**Judi Cabana Kelley Lafreniere** Author
We have heard from GD, through our dealership service dept. They are hoping to replace our entire floor, in the Spring. They said the pink stuff is a bad batch of adhesive, that is seeping through to the top of the floor. They said they doubt, very muc... **See More**

Like · Reply · 13w · Edited  2



**Carol Stephan Heald**
These stains came up in our floor (2017) within a year of purchase. I brought it to our dealers attention and they blew me off. Thanks to this group I contacted GD and showed them proof that I reported this within a year of purchase. It is a bacteria i... **See More**

Like · Reply · 8w  2



**Karen Willhide Ranta**
Just heard from our dealer today and we are getting our floor replaced from GD. It's a 2018.

Like · Reply · 3d  2



**Connie Jo DeWitt**
Ours is a 2017, no warranty . I wonder how to figure out what to do.

Like · Reply · 3d



**Karen Willhide Ranta**
**Connie Jo DeWitt** start by calling grand design. They give you a case # then I just gave that to my dealer and they handled it all. Started this process in August just got it approved yesterday so takes time.

Like · Reply · 3d

39

 **Tammy Brown-Garber**
October 16, 2020 · 🌐                                  •••

We have a 2018 - 2600RB
We purchased it new.
We have a problem with wet floors and walls only a few times.
We cut the floor to vent the vinyl floor to dry. Almost fixed the vinyl
and it happened again?? Can't find the source of the leak. Our
moisture meter said the walls and floor were wet but NOT the
carpet? It's an odd spot near the bench seat and into the bedroom
doorway (like a v shape design) We just paid for a pressure test and
they don't see anything leaking. This is ridiculous that a 2 year old
camper we use as a weekend getaway which sits in the spring and
fall for just a few weeks has a random water problem. Has anyone
else had a similar problem in this group?

 1                                    17 Comment

🖒 Like                            💬 Comment

 **Deb Buchanan**
We have almost the same problem. Figured out is was
happening after having significant rain and we put the
slide in. Basically, the slide is working as a squeegee
and pushing water in. I am probably not describing this
properly so maybe my better half... **See More**

Like · Reply · 13w                               1

↪  Tammy Brown-Garber replied · 1 Reply

 **Rachel Duke**
 
You might look up the couple who put a video of their
trailer from youtube. Can't remember their name but
they shared there problems. They had mold growing
behind their dinette after they removed it to put in a
desk. They posted a week or so ago. Scroll till you find

40



**Brad Squires**
I have a 2018 2600 and never thought I had a water issue till the floor almost fell out. Total loss.



Like · Reply · 13w   😮 4



**Judi Cabana Kelley Lafreniere** [Author]
**Brad Squires** Yikes! Did the pink marks show up first?

Like · Reply · 13w



**Karen Willhide Ranta**
**Brad Squires** wow did it start with the pink marks?

Like · Reply · 13w                                    👍 1 

↳ View 1 more reply



**Jay Leonard**
Awesome excuse for a new floor lol

Like · Reply · 13w



**Judi Cabana Kelley Lafreniere** [Author]
**Jay Leonard** why would you want a new floor, it's only 2 years old? I sure don't!                        •••

Like · Reply · 13w



**Jay Leonard**

41

↗ View 4 more replies



**Janet Weldon Egan**
Hhhmm. I'll be on the look out for those kinds of stains in my camper, Doesn't sound/look like a good thing.

Like · Reply · 13w                     1



**Wendy Lux**
we have a spot in our bedroom area

Like · Reply · 13w                     1



**Judi Cabana Kelley Lafreniere**  Author
**Wendy Lux** that's where ours started, how old is your camper?

Like · Reply · 13w



**Wendy Lux**
**Judi Cabana Kelley Lafreniere** Ours is a 2018. its as you walk into the bedroom to the left of the foot of the bed.

Like · Reply · 13w                     1

↳ View 3 more replies



**Craig Zolkowski**
**Susan Zolkowski**

Like · Reply · 13w



**Susan Zolkowski**
**Craig Zolkowski** yes I have found these same stains.

Like · Reply · 13w                                          ···



**Craig Zolkowski**
**Susan Zolkowski** If it gets worse we'll need to contact GD.

Like · Reply · 13w                     1

Like · Reply · 13w

 **Kevin Acker**
We had it on our 2017 2600 RB. It was caused by water coming in by the slide. GD replaced the whole floor this summer at no charge.

Like · Reply · 13w  4

 **Judi Cabana Kelley Lafreniere** Author
**Kevin Acker** did they do the work at the dealership or at GD, and did walls and cabinets have to be removed?

Like · Reply · 13w

 **Kevin Acker**
**Judi Cabana Kelley Lafreniere** GD did the work at their plant. Picked it up and delivered it back to us in Conklin NY. Told us to make a list of anything that was wrong. Some things we did ourselves such as wrinkled the decal and broke vegetable bin whi... **See More**

Like · Reply · 13w

 **Carol Stephan Heald**
We had it but it started on the other side of the camper. We thought it was an antifreeze issue

Like · Reply · 13w

 **Judi Cabana Kelley Lafreniere** Author
**Carol Stephan Heald** have you had it fixed?

Like · Reply · 13w · Edited

 **Carol Stephan Heald**
**Judi Cabana Kelley Lafreniere** The service guy at our dealership blew me off. He didn't believe me even after seeing pictures. Ours is a 2017 and this started right away. 😭

Like · Reply · 13w  1

43

73.     One consumer complaint made by an owner of a Grand Design RV –
Imagine 2600RB suggested "Seal all openings so water intrusion will not end up
soaked into the luan underlayment.  Or simply use Azdel rather than Luan.[37]
(December 2020) (Luan is a thin plywood underlayment material often used in
motorhomes under vinyl flooring; Azdel is a composite material comprised of
polypropolene and fiberglass, which is purported to be both lighter and less
susceptible to mold and mildew.)

74.     And owners have flocked to different Facebook groups, including the
ones described above, to express their displeasure with the water intrusion and
resultant pink spots and mold in Imagine Model RVs.  Plaintiff includes a sampling
of these complaints below, which appears without grammatical or typographical
alteration.  Additional Facebook posts can be found in Exhibit E.

---

[37] Grand Design Owners' Forum, "Search Result,"
https://gdrvowners.com/search?q=seal+all+openings&searchJSON=%7B%22ke
ywords%22%3A%22seal+all+openings%22%7D (last visited July 14, 2021).

| Date | User | Complaint |
|------|------|-----------|
| 8/23/2019 | Graham Wood | Anyone ever seen a pink stain like this? I put the RV away from a camping trip 6 weeks ago and everything was fine. When I opened the slide today I found this mark. It's under the slide, but the underside of the slide is completely clean. Normal cleaners won't take it off. I dewinterized in April so I don't think it's RV antifreeze.[38]  |
| 10/14/2020 | Judi Cabana Kelley Lafreniere | We own a 2018 - 2600RB, and all of a sudden these pink marks are showing up on the floor. Anyone else seen this happen?[39] |

[38] Facebook, "Grand Design RV Owners," https://www.facebook.com/groups/GDRVowners/permalink/1116637468534172 (last visited April 5, 2021).

[39] Facebook, "Grand Design Imagine 2600RB Owners," https://www.facebook.com/groups/408558422946703/permalink/1004318606 704012 (last visited April 5, 2021).

| Date | User | Complaint |
|------|------|-----------|
| | |  |
| 8/3/2019 | Rusty Prochnow | Anybody have an idea of what this might be? 2019 Imagine 2670 MK, corner of the slide closest to the refrigerator. Weird purple stain, seems dry and won't come up when scrubbed.[40] |

---

[40] Facebook, "Grand Design RV Owners with Issues,"
https://www.facebook.com/groups/116343539240116/permalink/415016309372
836/ (last visited April 5, 2021).

| Date | User | Complaint |
|------|------|-----------|
| | |  |
| 6/16/2018 | Jennifer Steiner | We found this pink stain located where the slide goes out on the 2150RB, nothing was stored in this area, we have tried several cleaners with no success. I researched and found out others on this site have had the same issue,. I was wondering if anyone found a solution and did GD finally do something about the problem? I'm getting very discouraged with the quality of GD, but hoping this problem can be fixed.[41]  |
| 9/16/2018 | Craig Lemcke | Has anyone had this issue come up? At first the dealer told me it was antifreeze that had gotten spilled on the |

| Date | User | Complaint |
|------|------|-----------|
| | | floor (until they were in formed that they were the ones who winterized it) now they are saying that another GD owner who bought theirs 6 days before us had the same issue. Also it seems to be growing every time I look at it.[42]<br><br> |
| 9/17/2018 | Fred Austin | I have the same issue.<br>I've never seen this in other brands of rv's. We showed it to our friends, after they were looking at brand new GD 5th wheels and one had very same stain. Strange<br>My feeling, it's gotta be something GD is doing or material supplier is suppling at time of manufacturing. To many complaints to be owners fault. If it's mold which I don't believe it is it had to start at factory and is starting to show up.<br>Just sayin[43] |

---

[42] Facebook, "Grand Design RV Imagine Owners,"
https://www.facebook.com/groups/146736952385751/permalink/70862493953
0280/ (last visited April 5, 2021).

[43] Facebook, "Grand Design RV Imagine Owners,"
https://www.facebook.com/groups/146736952385751/permalink/70862493953
0280/ (last visited April 5, 2021).

| Date | User | Complaint |
|------|------|-----------|
|  |  |  |
| 2/22/2019 | Patrick Villerot | We picked up our GD Imagine 2800BH in March of 2018. In August, we noticed two pinkish red stains developing on the floor (they were not there when we picked up the unit).  Has anyone else experienced anything like this?<br>The first photo is in April. The second and third were taken in August.<br>Nothing was spilled. It is not antifreeze. And no cleaner will touch it.[44] |

---

[44] Facebook, "Grand Design RV Imagine Owners,"
https://www.facebook.com/groups/146736952385751/permalink/799115560481
217/ (last visited April 5, 2021).

| Date | User | Complaint |
|------|------|-----------|
|  |  |  |
| 8/4/2019 | Jeff Allaire | Checking to see what people that had the "pink mold spots" showing up on the vinyl floor have done or what gd has done about it? I have some under my bathroom cabinet which I mentioned to gd last year before my 1 year. They didn't really say much. Tried to tell me it was pink antifreeze which it's not. Now I noticed s slight pink spot in the living area. I was not too concerned if it was just under the sink but if it's going to show up everywhere else it's an issue.<br>The worst pic is under sink. The other one is in living area[45] |

---

[45] Facebook, "Grand Design RV Imagine Owners," https://www.facebook.com/groups/146736952385751/permalink/90158292690 1146/ (last visited April 5, 2021).

| Date | User | Complaint |
|------|------|-----------|
|  |  |  |
| 9/15/2020 | Kim Heufelder Cook | Has anyone had trouble with a pink stain coming through their vinyl floor.  It is not near any pipes or water source but right next to a wall.  Wondering about pink mold?[46] |

75.     Critically, the pink discoloration in the flooring in each of the above RVs is not related to the glue as originally claimed.  Instead, the pink discoloration is an indicator that mold is growing under the flooring material.  In other words, each photograph of pink discoloration is evidence of water intrusion and mold resulting from the Slide-Box Exterior Seal Defect present in all Imagine model RVs.  Any assertion by Grand Design or its employees or agents that the pink staining was caused by adhesive was disingenuous at best.

76.     Sometimes—following Bill Martin's lead—another Grand Design

---

[46] Facebook, "Grand Design RV Imagine Owners," https://www.facebook.com/groups/146736952385751/permalink/123271174045 4928/ (last visited April 5, 2021).

employee, Emily Stahley, replied to owners' Facebook complaints (going by "Emily Rose" in the below replies, and billing herself as Grand Design's "Director of Customer Experience"). Grand Design user forum posts relate that in April 2018, Bill Martin had left Grand Design and Stahley had "come over from Lippert to work with the customer service group."[47] Stahley's LinkedIn profile bills her as Grand Design's current "Director of Customer Experience and Social Media," with the responsibility of "[b]ridging the communication between social media sites, customer service and marketing."[48]

| Date | User | Reply |
|------|------|-------|
| 4/29/2020 | Emily Rose, Director of Customer Experience at Grand Design RV | Hi Brian. Thanks for posting. Could you please send be your VIN and contact info? I can get you in touch with a rep who can assist!<br>Thank you![49] |
| 4/29/2020 | Emily Rose, Director of Customer Experience at Grand Design RV | **Brian Kimmel** thank you. I will be getting in to messages in just a bit. We are finishing up eLearning 🤦‍♀️🤦‍♀️ lol![50] |

[47] MyGrandRV, "Bill Martin,"
https://www.mygrandrv.com/forum/showthread.php/16648-Bill-Martin (last visited July 14,, 2021).

[48] LinkedIn, "Emily Stahley – Director of Social Media – Grand Design RV,"
https://www.linkedin.com/in/emily-stahley-15432ab2/ (last visited July 14, 2021).

[49] Facebook, "Grand Design RV Imagine Owners,"
https://www.facebook.com/groups/146736952385751/permalink/11208957249 69864/ (last visited April 5, 2021).

[50] Facebook, "Grand Design RV Imagine Owners,"
https://www.facebook.com/groups/146736952385751/permalink/11208957249 69864/ (last visited April 5, 2021).

| Date | User | Reply |
|------|------|-------|
| 7/10/2020 | Emily Rose, Director of Customer Experience at Grand Design RV | Hi Brandon! I would suggest you contact our support team at 574-825-9679 so they can document and provide you the best information. They are in the office until 5pn EDT today.[51] |

77.     Despite this multitude of complaints, beginning nearly a year before Plaintiff purchased his RV, Grand Design has failed to publicly acknowledge and disclose the true nature and extent of the Defect.  It has likewise failed to disclose the repairs and replacements needed to properly address the Defect and eliminate the water intrusion.

78.     Instead, despite Plaintiff's, Lazyday's, and ServPro's repair efforts—which Grand Design signed off on—the water intrusion and resultant mold kept on returning.  Grand Design either knew the failed fixes would not work, or Grand Design simply had not done the engineering analysis and testing needed to properly assure that the fixes would be effective.  It is akin to repairing the floor in a house with a persistent roof leak—the floor repair only holds until the next time it rains and the roof leaks again.

79.     Grand Design's conduct is particularly egregious given that it lures potential buyers by claiming to use quality materials where other manufacturers cut corners.  As Grand Design knows, those same other manufacturers have used

---

[51] Facebook, "Grand Design RV Imagine Owners," https://www.facebook.com/groups/146736952385751/permalink/1177725335953569/ (last visited April 5, 2021).

alternative designs over the past few decades to eliminate water intrusion Defects such as those present here.  Unlike Grand Design's, those designs have actually been effective.  Those designs have not failed in a widespread manner, as is happening with the RVs owned by Plaintiff and members of the Class.

80.     Grand Design could have eliminated the problem altogether back in 2017 by simply using one of the many effective alternative designs employed on travel trailers over the past decades.  It chose not to, instead electing to mass-produce a defective RV and subject its customers to thousands of repetitive repairs and involuntary experiments on a critical safety issue.

81.     As established above, Grand Design has chosen to continue profiting from the sale of its Imagine Model RVs since 2017, despite knowledge that the RV suffers from the Defect and is worth substantially less than consumers paid.  The consumers, in turn, are left with an unreasonably defective RV, holding substantially reduced resale value, and an excessive and unsuccessful series of costly repairs.

82.     Having made no material changes to the design or manufacturing process utilized to create the RV, Grand Design systematically attempts to "run out the clock" on expiration of the Warranty Period as a basis to deny and dissuade valid warranty claims, like those of Plaintiff.  But Grand Design's remedial efforts do not address the underlying cause of the Defect—present since manufacturing—it merely signs off on what can at most be described as cosmetic repairs.

83.     Had Plaintiff known the truth about Grand Design's defective RV

design, failure to inspect for air leaks, and failure to cure the Defect that it created—including its failure to honor the Warranty—he would not have purchased the RV from Grand Design.

84.     Plaintiff has loved the outdoors all his life. To satisfy his enthusiasm for nature, he plans to continue camping and using a travel trailer. Because Plaintiff likes the layout and appearance of Grand Design models, he is likely to purchase a Grand Design RV in the future, but only if the problems with the Defect can be remedied. This lawsuit is thus all the more personal and critical to Plaintiff.

## CLASS ACTION ALLEGATIONS

85.     Plaintiff brings this class action on behalf of himself and all other persons similarly situated. The proposed class (the "National Class" and "Florida Subclass" are collectively referred to as the "Class") is defined as follows:

### National Class

All persons and entities who purchased a Grand Design Imagine Series RV in the United States in Model Years 2017 to 2021.

### Florida Subclass

All persons and entities who purchased a Grand Design Imagine Series RV in the state of Florida in Model Years 2017 to 2021.

86.     Expressly excluded from the Class are:

a.     any Judge or Magistrate Judge presiding over this action and members of their immediate families;

b.     Grand Design and any entity in which Grand Design has a controlling

interest, or which has a controlling interest in Grand Design and its legal representatives, assigns and successors; and

c.     all persons who properly execute and file a timely request for exclusion from the Class.

87.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

## A.     Numerosity and Ascertainability

88.     Plaintiff is unable to state the precise number of members of the Class because such information is in the exclusive control of Grand Design.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of members of the Class is at least in the thousands and members of the Class are so numerous that joinder of all class members is impracticable.  The exact size of the proposed Class, and the identity of the members thereof, will be readily ascertainable from the business records of Grand Design and its authorized dealers.  The disposition of all of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court. Members of the Class are readily identifiable from information and records in Grand Design's possession, custody, or control.

## B.     Commonality

89.     There are common questions of law and fact affecting the rights of each member of the Class and common relief by way of damages.  The harm that

Grand Design has caused or could cause is substantially uniform with respect to members of the Class. Common questions of law and fact that affect the members of the Class include, but are not limited to:

a.  Whether the Slide-Box Exterior Seal Defect in the 2017 through 2021 Imagine Series RVs leads to water intrusion and mold growth;

b.  Whether Grand Design has made and will continue to make false and/or misleading statements of fact or has omitted and will continue to omit material facts to members of the Class and the public concerning the Slide-Box Exterior Seal Defect on the 2017 through 2021 Imagine Series RVs;

c.  If so, whether Grand Design's false and/or misleading statements of fact and concealment of material facts concerning the performance and reliability of the 2017 through 2021 Imagine Series RVs were likely to deceive consumers acting reasonably in the same circumstance;

d.  Whether the Slide-Box Exterior Seal Defect in the 2017 through 2021 Imagine Series RVs fails to conform to Grand Design's product specifications;

e.  Whether Grand Design concealed from Plaintiff and members of the Class that the Slide-Box Exterior Seal Defect in the 2017 through 2021 Imagine Series RVs do not conform to Grand Design's product specifications;

f.  Whether, by the misconduct alleged in this action, Grand Design has:

      i.   Breached its Express Warranty;

     ii.   Violated the Magnuson-Moss Warranty Act;

    iii.   Breached the Implied Warranty of Merchantability; and

    iv.   Violated Florida's Unfair and Deceptive Trade Practice Act, Fla. Stat. § 501.201, *et seq*.; and

g.  Whether, as a result of Grand Design's misconduct as alleged herein, Plaintiff and members of the Class are entitled to damages, restitution, injunctive relief, and other remedies, and, if so, the amount and nature of such relief.

## C.   Typicality

90.   Plaintiff's claims are typical of the claims of the other members of the Class. Grand Design's conduct has caused Plaintiff and the other members of the Class to sustain the same or substantially similar injuries and damages. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained economic injuries, including ascertainable loss and injury in fact, arising out of Grand Design's violations of law as alleged herein.

## D.   Adequate Representation

91.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff is a member of the Class and does not have any conflict of interest with other members of the Class. Plaintiff has retained and is represented by competent counsel who are experienced in complex class action

litigation, including automobile defect and consumer class actions such as the present action.

92.    Plaintiff and his counsel are committed to vigorously prosecuting the action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of the Class.

**E.    Predominance and Superiority**

93.    The common questions of law and fact set forth herein predominate over any questions affecting only individual members of the Class.  A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons which is superior to the alternative methods involved in individual litigation:

    a. The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems.  There are no unusual legal or factual issues that would create manageability problems.  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

    b. Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

c. Despite the expensive nature of the repair costs suffered by Plaintiff and other members of the Class, the claims of the individual members of the Class are, nevertheless, small in relation to the expenses of individual litigation, making a Class action the only procedural method of redress in which members of the Class Members can, as a practical matter, recover.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of the Florida Subclass)

94. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 93 above.

95. Plaintiff, and each member of the Class, formed a contract with Defendant at the time they purchased their RV. The terms of that contract include the promises and affirmations of fact made in Defendant's Three Year Limited Structural Warranty. Defendant's Three Year Limited Structural Warranty became part of the basis of the bargain and is part of the standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other hand. Among other things, Defendant's promises create express warranties "against certain defects in materials and/or workmanship for the structural components manufactured by, and workmanship provided directly by," Defendant. Because Defendant does not provide a copy of its complete warranty before purchase and installation, any effort by Defendant to disclaim liability is unreasonable, and, therefore, ineffective and unenforceable.

60

96.     All conditions precedent to Defendant's liability under this Express Warranty contract were performed by Plaintiff and members of the Class, when they purchased the RV.

97.     Plaintiff Gorecki afforded Grand Design a reasonable opportunity to cure their breach of express warranty, including through numerous oral and written demands as set forth herein.  At the time of sale of each RV and all relevant times thereafter, Grand Design knew of the material misrepresentations and omissions concerning the standard, quality or grade of the RV and the existence of the Defect, but chose not to disclose it to Plaintiff or members of the Class.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Grand Design a reasonable opportunity to cure its breach of warranty is excused and thereby deemed satisfied.

98.     The RV's Defect persists beyond the terms of the Warranty that Defendant provides.  Defendant knows that certain repair and maintenance tactics will be ineffective, and yet Defendant signs off on them anyway, purposefully running down the clock on the Warranty.   This constitutes a violation of Defendant's express warranty.

99.     As a result of Defendant's breach of express warranties, Plaintiff and the Class have suffered and will continue to incur damages in an amount to be proven at trial, including but not limited to diminution in value and remedial out-of-pocket costs.

## SECOND CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Florida Subclass)

100.  Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 93 above.

101.  The Magnuson-Moss Warranty Act imposes civil liability on any warrantor for, inter alia, failing to comply with any obligation under a written and/or implied warranty. 15 U.S.C. § 2310(d)(1).  The Act authorizes suits for damages and other legal and equitable relief and the award of attorney's fees, and expressly authorizes class actions. 15 U.S.C. §§ 2310(d)(1), 2310(e).

102.  The RVs are tangible personal property distributed in commerce, normally used for personal, family, or household purposes.  As such, the RVs are "consumer products" as that term is defined in 15 U.S.C. § 2301(1).

103.  Plaintiff and members of the Class have purchased the RVs and are "consumers" as that term is defined in 15 U.S.C. § 2301(3).

104.  At all relevant times, Grand Design has been engaged in the business of designing, manufacturing, and distributing the RVs to Plaintiff and members of the Class as well as the general public.  The RVs are also subject to implied warranties. As such, Grand Design is a "warrantor" within the meaning of 15 U.S.C. § 2301(5), and the RVs are equipped with "implied warranties" as that term is defined in 15 U.S.C. § 2301(7).

105.  Grand Design breached these implied warranties by misrepresenting

the standard, quality or grade of the RVs and failing to disclose and concealing the existence of the Slide-Box Exterior Seal Defect which leads to water intrusion and mold growth.  Without limitation, the RVs share a common inherent defect in design, material, manufacturing and/or workmanship that is prone to untreatable mold growth that prevents the RVs from operating as represented and warranted by Grand Design.

106.    Plaintiff and members of the Class have had sufficient direct dealings with Grand Design or its agents (dealerships such as Lazydays) to establish privity of contract between Grand Design, on the one hand, and Plaintiff and members of the Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Grand Design and its dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the RV and have no rights under the warranty agreements provided with the RV; the warranty agreements were designed for and intended to benefit purchasers and lessees of the RVs only.

107.    Plaintiff Gorecki afforded Grand Design a reasonable opportunity to cure their breach of implied warranty, including through numerous oral and written demands as set forth herein.  At the time of sale of each RV and all relevant times thereafter, Grand Design knew of the material misrepresentations and omissions concerning the standard, quality or grade of the RV and the existence of the Defect, but chose not to disclose it to Plaintiff or members of the Class.  Under

the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Grand Design a reasonable opportunity to cure its breach of warranty is excused and thereby deemed satisfied.

108.   Plaintiff and members of the Class would suffer economic hardship if they returned their RVs but did not receive the return of the premium paid for the product that they received.  Thus, Plaintiff and members of the Class have not re-accepted their RVs by retaining them with the Defect.

109.   By requiring Plaintiff and members of the Class to pay for RVs that suffer from a Defect that occurred through no fault of Plaintiff or members of the Class, Grand Design has breached and will continue to breach these implied warranties.  Grand Design has had more than adequate opportunity to cure the problem, but Grand Design has not done so.

110.   Plaintiff and members of the Class have been damaged and will continue to be damaged by Grand Design's failure to comply with its obligations under the applicable implied warranties.  As a direct and proximate result of Grand Design's breach of implied warranties, Plaintiff and members of the Class have suffered actual economic damages.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty**
**(On Behalf of the Florida Subclass)**

111.   Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 93 above.

112.   At all relevant times, Grand Design has been a company engaged in the business of designing, manufacturing, and selling RVs to Plaintiff and members of the Class as well as the general public and is therefore a manufacturer with respect to recreational vehicles.

113.   Plaintiff is informed and believes and thereupon alleges that Grand Design is the warrantor of the RVs.

114.   The RVs were accompanied by express warranties offered by Grand Design and extended to Plaintiff and the members of the Class through a direct new RV sale.  Due to the existence of the express warranties, Grand Design cannot disclaim implied warranties.

115.   Grand Design partners with its authorized retailers to sell RVs directly to the public and it offers an express three (3) year structural warranty to each purchaser of a new Imagine Series RV.

116.   The RVs contained an implied warranty of merchantability running from Grand Design to Plaintiff and members of the Class.

117.   Plaintiff and members of the Class purchased the RVs with the reasonable expectation that the RVs were fit to be used for the ordinary and intended purpose of providing Plaintiff and members of the Class with safe transportation free of incurable design defects that would lead to potential health hazards and loss of use of the RVs.  Grand Design knew when it manufactured and sold the RVs that the intended and ordinary purpose of the RVs was to provide their owners with safe transportation free from defects that lead to irreparable

damage. The RVs contained a Slide-Box Exterior Seal Defect (at the time of sale and all times thereafter) which led to water intrusion and resulted in mold growth that presented an undisclosed safety risk to and occupants and resulted in internal damage to the RVs necessitating repairs and mold remediation/removal. Thus, Grand Design breached its implied warranty of merchantability.

118.    Under normal circumstances, properly designed and manufactured RVs should not contain any inherent defects (such as the Slide-Box Exterior Seal Defect) that would lead to water intrusion and mold. Grand Design cannot disclaim this implied warranty as it knowingly sold a defective product.

119.    Plaintiff and members of the Class have had sufficient direct dealings with Grand Design or its agents (dealerships) to establish privity of contract between Grand Design, on the one hand, and Plaintiff and members of the Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Grand Design and its dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the RVs and have no rights under the warranty agreements provided with the RVs; the warranty agreements and representations incident thereto were designed for and intended to benefit purchasers of the RVs.

120.    At all times that Plaintiff had possession of his RV, Plaintiff used it for the intended and ordinary purpose of transportation. However, all Imagine Series RVs were not fit for the ordinary purposes for which they were sold. They were in

fact defective in design, as set forth above, and not fit to provide Plaintiff and members of the Class with dependable, safe, and usable transportation.

121.   As a direct and proximate result of Grand Design's breach of the implied warranty of merchantability, Plaintiff and members of the Class have suffered damages in that they did not receive the benefit of the bargain.  Plaintiff believed that he was sold a Grand Design RV that would be free of structural defects.   Instead, Plaintiff and members of the Class received RVs with an irreparable and inherent Defect, which leads to continued water intrusion and mold growth, making the RV not suitable for use.  A reasonable consumer would have not paid the high purchase price for the RVs or would have not purchased them at all if they knew that the RVs were defective and could not be repaired.  Now that the Defect is known, Plaintiff and all members of the Class have RVs that are worth substantially less from a resale standpoint because the Slide-Box Exterior Seal cannot be repaired and water will continue to leak into the RVs causing mold growth that will need to be continually addressed for the life of the RVs.

122.   Plaintiff has suffered damage including but not limited to the payment of a higher price for an RV of substandard quality, as well as money and time expended on continued mold removal/remediation and other repairs related to the Defect and other incidental and consequential damages, and attorneys' fees, costs, and expenses which Plaintiff and members of the Class have incurred and will continue to incur in order to protect their rights in this matter.

## <u>FOURTH CAUSE OF ACTION</u>
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Florida Statute Section 501.201, *et seq*.**
**(On Behalf of the Florida Subclass)**

123.   Plaintiff re-alleges and incorporates by reference herein all allegations contained in paragraphs 1 through 93 above.

124.   The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.,* ("FDUTPA") is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

125.   Plaintiff and the members of the Class are a "consumer" as defined by Florida Statute § 501.203(7).

126.   The RVs are "trade or commerce" as defined by Florida Statute § 501.203(8).

127.   FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, and in unfair methods of competition.

128.   For the reasons discussed herein, Grand Design violated FDUTPA by engaging in the actions described herein by failing to disclose the Defect in the RVs, of which it had direct notice, which violates Florida Statute § 501.201, *et seq*. Grand Design's unconscionable, deceptive, and unfair acts and practices described

herein were likely to, and did in fact, deceive members of the public, including consumers (like Plaintiff and members of the Class) acting reasonably under the circumstances and to their detriment.

129. In committing the acts alleged above, Grand Design engaged in unconscionable, deceptive, and unfair acts and practices by failing to disclose the known Slide-Box Exterior Seal Defect in the RVs that resulted in water intrusion which led to mold growth, which caused Plaintiff and members of the Class to sustain damages.

130. Grand Design's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Grand Design failed to disclose to Plaintiff and members of the Class the known Defect in the RVs, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to consumers.

131. In committing the acts alleged above, Grand Design engaged in unconscionable, deceptive, and unfair acts and practices.

132. Grand Design's conduct is unconscionable, deceptive and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. Plaintiff and the members of the Class, as consumers, relied on Grand Design's representations.

133. As a direct and proximate result of Grand Design's conduct, Plaintiff and the members of the Class have been harmed by not receiving the benefit of

their bargain. Specifically, Plaintiff and the Class paid a premium for what they believed was a high quality Imagine Series RV. What they received, however, was an RV of low quality that suffers from a Defect which causes water intrusion and mold growth. Plaintiff and members of the Class seek a refund of the difference between what they received and what they should have received.

134. As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff and the members of the Class have been damaged and are entitled to recover actual damages, to the extent permitted by law, including Florida Statutes § 501.211 in an amount to be proven at trial.

135. In addition, pursuant to Florida Statutes § 501.211, Plaintiff and the members of the Class seek equitable relief and to enjoin Grand Design on terms the Court considers reasonable. Plaintiff and the members of the Class also seek reasonable attorneys' fees and costs, as prescribed by Florida Statutes § 501.211(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class pray for judgment against Grand Design as follows:

A. That the Court determine that this action may be litigated as a class action and that Plaintiff and his counsel be appointed class representative and class counsel, respectively;

B. That the Court enter judgment against Grand Design and in favor of Plaintiff and members of the Class on all counts;

C.     That Grand Design be required by this Court's Order to remedy the Defect alleged herein, and to compensate all members of the Class for their damages and injuries, as well as to compensate Plaintiff's counsel for their attorneys' fees and costs of suit, and that Grand Design be ordered to bear the cost of notice to the absent members of the Class;

D.     That damages and/or restitution or disgorgement be awarded to Plaintiff and each member of the Class according to proof;

E.     That the Court award injunctive and declaratory relief as pled or as the Court may deem proper;

F.     That the Court award interest as allowable by law;

G.     That the Court award reasonable attorneys' fees as provided by applicable law;

H.     That the Court award all costs of suit; and

I.     That Plaintiff and the members of the Class be awarded all such other relief as this Court deems just and proper.

## **Jury Demand**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 14th day of July, 2021.

Respectfully submitted,

**VARNELL & WARWICK, P.A.**

/s/ Brian W. Warwick
Brian W. Warwick; FBN: 0605573

Janet R. Varnell; FBN: 0071072
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com
ewillis@varnellandwarwick.com
kstroly@varnellandwarwick.com

William H. Anderson (*pro hac vice*)
wanderson@hfajustice.com
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive
Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (844) 300-1952

Stephen Pearson (*pro hac vice*)
spearson@hfajustice.com
**HANDLEY FARAH & ANDERSON PLLC**
200 Massachusetts Avenue, NW
Seventh Floor
Washington, DC 20001
Telephone: (202) 921-4567
Facsimile: (844) 300-1952

Christopher J. Brochu
c.brochu@brochulaw.com
Fl. Bar. No.: 1013897
**BROCHU LAW, PLLC**
841 Prudential Drive, Suite 1200
Jacksonville, Florida 32207
Telephone: (904) 201-1771

*Attorneys for Plaintiff Gregory Gorecki, and on behalf of all others similarly situated.*